```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,                    11 Civ. 2420

     -against-                                OPINION

PERRY A. GRUSS,

                Defendant.

------------------------------------X
```

A P P E A R A N C E S:

    Attorneys for Plaintiff

    SECURITIES & EXCHANGE COMMISSION
    3 World Financial Center, Room 4300
    New York, NY 10281
    By:  Todd D. Brody, Esq.

    Attorneys for Defendant

    DORSEY & WHITNEY LLP
    250 Park Avenue
    New York, NY 10177
    By:  Nathaniel H. Akerman, Esq.
        Thomas O. Gorman, Esq.
        Cecilie H. MacIntyre, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/13/12

**Sweet, D.J.**

Defendant Perry Gruss ("Gruss" or the "Defendant") has moved pursuant to 28 U.S.C. § 1292(b) to certify a question from this Court's May 9, 2012 opinion (the "May 9 Opinion") for an immediate appeal.

Based upon the conclusions set forth below, the motion is denied.

## I. Prior Proceedings

The facts underlying this action are set out in this Court's May 9 Opinion, SEC v. Gruss, --- F. Supp. 2d. ---, 2012 WL 1659142 (S.D.N.Y. 2012), familiarity with which is assumed.

Briefly stated, the plaintiff U.S. Securities and Exchange Commission (the "SEC" or the "Plaintiff") filed its initial complaint against Gruss on April 8, 2011 seeking enforcement of the Investment Advisers Act of 1940 (the "IAA"), 15 U.S.C. § 80b-6. On June 10, 2011, the SEC amended its complaint (the "Complaint"), adding factual allegations after

being served Gruss' motion to dismiss. The Complaint sets forth a claim for relief against Gruss consisting of four separate alleged frauds, charged as aiding and abetting violations of Sections 206(1) and (2) of the IAA.

On July 15, 2011, invoking Rules 12(b)(6), 8(a) and 9(b) of the Federal Rules of Civil Procedure, Gruss moved to dismiss the Complaint based on the Supreme Court's opinion in Morrison v. National Australia Bank, Ltd., --- U.S. ----, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). Gruss' motion to dismiss was denied on May 9, 2012.

On May 17, 2012, Gruss moved to certify for immediate appeal a question raised by the May 9 Opinion. Specifically, Gruss framed the question as: Whether Section 206 of the IAA has extraterritorial reach when the advisory client that is the object of the fraud is outside the U.S. and subject to a foreign securities regulatory regime.

The instant motion was heard and marked fully submitted on June 13, 2012.

## II. The Applicable Standard

3

The requirements for interlocutory review are governed by 28 U.S.C. § 1292(b). Section 1292 grants the district court discretion to certify an order for interlocutory appeal if the order (1) "involves a controlling question of law," (2) "there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The criteria for certifying a question under § 1292(b) "are conjunctive, not disjunctive. 'The federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court.'" Ahrenholz v. Bd. of Trs. of the Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000) (quoting Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 631 (2d Cir. 1991)). See also 19 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE, § 203.31[1] (3d ed. 2008) ("[I]n practice the courts treat the statutory criteria as a unitary requirement, and the decisions granting and discussing interlocutory appeals under 28 U.S.C. § 1292(b) uniformly cite all three of the elements as being present in any particular case.").

"Moreover, these criteria supply only the minimum standard that movants must meet" and "[d]istrict court judges have broad discretion to deny certification even where the statutory criteria are met." Bishop v. Best Buy, No. 08-8427(LBS), 2011 WL 4011449, at *12 (S.D.N.Y. Sept. 8, 2011) (citations omitted); see also Nat'l Asbestos Workers Med. Fund v. Philip Morris, 71 F. Supp. 2d 139, 162 (E.D.N.Y. 1999) ("The legislative history, congressional design and case law indicate that district court judges retain unfettered discretion to deny certification of an order for interlocutory appeal even where the three legislative criteria of section 1292(b) appear to be met.").

In addition, the district court must consider the efficiency of both the district court and the appellate court. See In re Lloyd Am. Trust Fund Litig., No. 96-1262(RWS), 1997 WL 458739, at *4 ("the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case."); see also Harriscom, 947 F.2d at 631 ("it does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given

case, instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case.").

### III. The Motion Fails to Meet the Minimum Threshold for an Interlocutory Appeal

In applying the § 1292(b) standard, courts have maintained that "the 'question of law' must refer to a 'pure' question of law that the reviewing court 'could decide quickly and clearly without having to study the record.'" In re Worldcom, Inc., No. M-47 (HB), 2003 WL 21498904, at *10 (S.D.N.Y. June 23, 2003) (quoting Ahrenholz, 219 F.3d at 676-77)). In addition, "[i]n determining whether a controlling question of law exists the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." Primavera Familienstifung v. Askin, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (citing Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24-25 (2d Cir. 1990)).

In support of his motion, Gruss argues that "the issue for certification is both a controlling question of law and has precedential value for a large number of cases." (Def. Memo at 7). He maintains that any appeal in this case will be decided based on purely legal questions and that the Offshore Fund was subject exclusively to the laws of a foreign securities regulatory regime, which, he alleges, the SEC previously acknowledged. (Def. Reply at 2) (stating that "there is no dispute about the facts that are critical to the issue for certification - the Offshore Fund is a Cayman Island fund regulated by that jurisdiction."). To support his contention, Gruss argues that the SEC presents facts that try to "shift the focus from the controlling issue of law presented for certification by Gruss to one centered on the old conduct and effects test rejected by Morrison - a test which did involve a fact intensive exercise that would not be appropriate for consideration." (Id.). Thus, according to Gruss, the facts alleged by the SEC apply only to show potential fraudulent conduct in the U.S. and has no application to the issue of whether a complaint alleging that the victim of the fraud is an offshore fund regulated by a foreign government states a cause of action based on § 206 under Morrison. (Id. at 3).

7

As noted by the SEC and the May 9 Opinion, however, the statutory regime and the operative documents for the Offshore Fund will raise factual issues. For example, while the Offshore Fund's Offering Memoranda stated that it was a foreign entity governed by foreign law, the Complaint alleges that the actual "operational and investment decisions for the Offshore Fund were all made . . . in DBZCO's New York office such that for all intents and purposes, the Offshore Fund was based in New York." (Compl. ¶ 20). Thus, in order to address this issue, among others addressed in the May 9 Opinion, relating to the SEC's argument that the Offshore Fund was for <u>Morrison</u> purposes, a domestic entity, the circuit court would have to review and analyze the record.

Gruss dismisses the SEC's presented facts as "irrelevant" and as a "red herring." (Def. Reply at 2). However, just because the alleged facts may be applicable towards the conduct and effects test, does not render the same facts inapplicable towards determining whether the victim of the fraud is an offshore fund subject to a foreign regulatory regime. Thus, the proposed question here cannot be based on purely legal questions but instead raises several factual

issues, rendering certification inappropriate. See Brown v. City of Oneonta, 858 F. Supp. 340, 349 (N.D.N.Y. 1994) ("Since this determination, although a legal issue, is essentially fact based in nature, interlocutory appeal is inappropriate.").

Gruss has also not demonstrated that "the resolution of the question for certification may have precedential effect in numerous cases across the country . . . [and] could impact numerous on-going non-public SEC investigations as well as cases pending in district courts across the country." (Def. Memo at 8). Without any quantification of how many pending cases could be impacted by the May 9 Opinion, Gruss' statement is merely speculative. Askin, 139 F. Supp. 2d at 573 ("Even assuming arguendo that the DLJ's dramatic characterization of this Court's ruling were correct, it is rather speculative to say that the ruling has precedential value for a large number of cases when those cases have yet to be brought."). Moreover, Section 929P(b) of the Dodd-Frank Act allows the SEC to commence civil actions extraterritorially in certain cases. While the May 9 Opinion may impact on cases concerning pre-Dodd-Frank conduct, it will have no impact on the cases brought with respect to current violative conduct. Taken together, there are insufficient grounds to support Gruss' assertion that the

question for certification has precedential effect in numerous cases across the U.S.

In addition, even accepting that the May 9 Opinion addressed a question of first impression, that "standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." In re Flor, 79 F.3d 281, 284 (2d Cir. 1996); see also Williston v. Eggleston, 410 F. Supp. 2d 274, 277 (S.D.N.Y. 2006) (finding that the fact that "simply because a question of law has not been authoritatively addressed" "by either the Supreme Court or the Second Circuit . . . does not make the question grounds for substantial difference of opinion."). Nor does the fact that "the parties themselves disagree as to the interpretation of persuasive authority constitute 'a difference of opinion' sufficient to warrant certification." Id. (citation omitted). Instead, in order to determine whether there is substantial ground for difference of opinion, the Court "must analyze the strength of the arguments in opposition to the challenged ruling, and determine whether there is 'substantial doubt' that the district court's order was correct." In re Methyl Tertiary Butyl Ether Prods. Litig., 399 F. Supp. 2d 320, 322-23 (S.D.N.Y. 2005) (internal citations omitted).

Gruss plans to advance four points on appeal, in which he believes exists a substantial basis for a difference of opinion, including: (1) that Morrison should be read broader than its facts to conclude that the presumption against extraterritorial effect applies to the instant case; (2) that the focus of Section 206 of the IAA is the protection of the client and not the investor; (3) where the location of the alleged violations took place; and (4) the number of U.S. shareholders in the Offshore Fund and the impact of Section 929P(b) of the Dodd-Frank Act's passage.

These four points mostly repeat arguments made in Gruss' motion to dismiss and essentially highlight his disagreement with the May 9 Opinion. Gruss' claim that the Court's reasoning or ruling was incorrect, "without more, does not demonstrate a substantial ground for difference of opinion." Bradley v. Jusino, No. 04-8411(RWS), 2008 WL 4566792, at * 2 (S.D.N.Y. Oct. 14, 2008); Florio v. City of N.Y., No. 06-6473(SAS), 2008 WL 3068247, at *1 (Aug. 5, 2008). Additionally, at least one of Gruss' points, the location of the conduct, cannot be resolved in a meaningful way without fact-sensitive discovery.

The Court recognizes that there are novel and difficult questions presented by the instant case. Several issues addressed in the May 9 Opinion require analysis of the text of the IAA, probing of the IAA's legislative history, as well as the employment of various canons of statutory interpretation to discern the Act's meaning. However, certification is not "intended as a vehicle to provide early review of difficult rulings in hard cases[,]" "[n]or is it appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts." Abortion Rights Mobilization, Inc. v. Regan, 552 F. Supp. 364, 366 (S.D.N.Y. 1982) (citations omitted).

Thus, even assuming arguendo that this case of first impression involves a controlling question of law, and assuming that the novelty and complexity of the issues presented by the motion to dismiss gave rise to a substantial ground for disagreement, Gruss cannot satisfy the third and most important element of the Section 1292(b) test that an immediate appeal will materially advance the ultimate termination of the litigation.

Gruss argues that an "immediate appeal, if successful, would resolve all but one limited issue in this case relating solely to the alleged fraud arising out of the purchase of the airplane, in part, from the Onshore Fund." (Def. Memo at 16). In addition, the appeal would "eliminate all of the discovery relating to the inter-fund transfers, the early payment of management fees, the enormous amount of resources that will be expended by Gruss' attorneys, both in their time in formulating a defense and in hiring experts, to unravel the complexities surrounding the 160 alleged inter-fund transfers and the review of over 1.9 million documents that the SEC has produced to Gruss." (Id.).

Gruss' assertions, however, do not prove that an interlocutory appeal would expedite the ultimate termination of the litigation, as "it is not enough that the interlocutory appeal would not delay the action; it must 'advance the time for trial or . . . shorten the time required for trial." Anderson Grp., LLC v. City of Saratoga Springs, No. 05-1369, 2008 WL 2064969, at *1 (N.D.N.Y. May 13, 2008). According to the Complaint, the inter-fund withdrawals violated the management agreements between DBZCO and both the Offshore and Onshore Funds under its management. Thus, regardless of whether the immediate

appeal is successful, Gruss will nonetheless be required to review the entire process by which the 160 inter-fund transfers were made and will have to incur the costs and the expenditure of time related to defending his claim. See Isra Fruit Ltd. v. Agrexco Agr. Export Co. Ltd., 804 F.2d 24, 25-26 (2d Cir. 1986) (rejecting an immediate appeal because even if some claims "were eliminated at this stage of the litigation, there is scant basis for believing that trial of the latter claims would be concluded with any appreciable savings of time."); In re Methyl Tertiary, 399 F. Supp. 2d at 324 (stating that "even if the Court's Order were reversed, the litigation would not terminate because plaintiffs would proceed on traditional causation theories."); In re Worldcom Sec. Litig., No. 02-3288(DLC), 2003 WL 22533398, at *10 (S.D.N.Y. Nov. 7, 2003) (noting that even if the defendants prevailed on appeal, the litigation would continue and "[t]he extent of the SSB Defendants' conflicts of interest and the effect of those conflicts on SSB's role as lead underwriter or manage would remain a significant issue in the case.").

As discussed above, the instant motion does not rise to one of the "exceptional circumstances [that would] justify a departure from the basic policy of postponing appellate review

until after the entry of a final judgment." Klinghoffer, 921 F.2d at 25 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978)). The question for certification here – whether Section 206 of the IAA has extraterritorial reach when the advisory client that is the object of the fraud is outside the U.S. and subject to a foreign securities regulatory regime – fails to meet all three prongs of the minimum threshold for an interlocutory appeal.

### IV. Conclusion

Based on the conclusions set forth above, the motion for immediate appeal is denied.

It is so ordered.

New York, NY
August 9, 2012

_____
ROBERT W. SWEET
U.S.D.J.